UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HENRY HILL, JEMAL TIPTON,
DAMION TODD, BOBBY HINES, KEVIN
BOYD, BOSIE SMITH, JENNIFER
PRUITT, MATTHEW BENTLEY and
KEITH MAXEY,

                             Plaintiffs,

v

JENNIFER GRANHOLM, in her Official
Capacity as Governor of the State of
Michigan, PATRICIA CARUSO, in her
Official Capacity as Director, Michigan             File No. 10-cv-
Department of Corrections, BARBARA
SAMPSON, in her Official Capacity as
Chair, Michigan Parole Board, jointly and           HON.
severally,

                    Defendants.

---

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

**NOW COME** Plaintiffs, by and through their counsel, and for their Complaint for

Declaratory and Injunctive Relief, against the Defendants, and each of them, state as follows:

### INTRODUCTION

1.      This action for declaratory and injunctive relief is brought under 42 U.S.C. §

1983.  Plaintiffs are individuals who were charged and tried as adults for crimes committed when

they were under the age of eighteen, punished by a mandatory adult sentence of life

imprisonment, and are currently being detained without a meaningful opportunity for release.

2. Juvenile offenders, as compared to adults, have lessened culpability and are less deserving of the harshest punishment available. They have a lack of maturity and an underdeveloped sense of responsibility, making them more vulnerable or susceptible to negative influences and outside pressures.

3. Since abolishing the death penalty in 1846 for crimes involving homicides, the harshest penalty the State of Michigan can impose on an adult convicted of any such crime, or series of crimes, is a life sentence without the possibility of parole.

4. Under the current scheme in Michigan, juveniles may be charged, tried and sentenced as if they were adults without consideration of their juvenile status, including their reduced culpability and unique capacity for change and rehabilitation as compared to adults.

5. Under Michigan law, seventeen-year-olds are treated as adults in all criminal proceedings and juveniles aged fourteen and up are automatically charged as adults for homicide offenses, absent the prosecutor filing a petition in juvenile court.

6. Michigan categorizes its homicide offenses as either first or second degree offenses. The former includes premeditated murder, murder of a peace officer, felony murder and aiding and abetting a murder. M.C.L. 750.316; M.C.L. 767.39. All other homicide offenses are categorized as second degree murder. M.C.L. 750.317.

7. Both first degree and second degree offenses can result in a sentence of life imprisonment. However, the sentence for a conviction under M.C.L. 750.316 is mandatory and Michigan courts have no discretion to consider the age of juvenile offenders who are charged and tried as adults, as a mitigating factor in their sentencing. M.C.L. 750.316.

8. Moreover, while a conviction for both first degree murder – M.C.L. 750.316 – and second degree murder – M.C.L. 750.317 – carries a maximum sentence of life

2

imprisonment, the Michigan Parole Board does not have jurisdiction over the mandatory life sentences given to juveniles convicted under M.C.L. 750.316.

9.     Plaintiffs were all charged and convicted under M.C.L. 750.316.

10.     Plaintiffs seek a declaration that Michigan laws, policies and practices, including M.C.L 791.234, insofar as it excludes Plaintiffs from the jurisdiction of the Michigan Parole Board and thereby denies them a meaningful opportunity for release, violates the Eighth and Fourteenth Amendments of the United States Constitution and customary international law.

11.     Plaintiffs do not challenge their judgments of conviction and do not seek to invalidate their life sentences; rather Plaintiffs seek orders that the Michigan Department of Corrections afford them, as persons sentenced to life imprisonment for offenses committed before they were eighteen years old, a meaningful opportunity to obtain release based on their demonstrated maturity and rehabilitation.

## JURISDICTION

12.     Jurisdiction is conferred on this Court by 28 U.S.C. § 1331, which authorizes federal courts to decide cases concerning federal questions, and by 28 U.S.C. § 1343(a), which authorizes federal courts to hear civil rights cases, and 28 U.S.C. § 2201, the Declaratory Judgment Act.

## VENUE

13.     Venue is proper in this Court, as the Defendants conduct their business across the state, including in the Eastern District of Michigan, and some of the named Plaintiffs are incarcerated in the Eastern District of Michigan.

## PARTIES

### Plaintiffs

14.     Plaintiff Henry Hill was charged, convicted and sentenced as an adult to a life sentence in Saginaw County, Michigan, for acts committed when he was a sixteen-year-old minor.  Plaintiff Hill is currently in the custody of the Michigan Department of Corrections.  He is imprisoned at the Thumb Correctional Facility in Lapeer County, Michigan, where he is assigned to the lowest custody level possible for an individual serving this sentence.  Henry has served twenty-eight years in adult prison.

15.     Plaintiff Jemal Tipton was charged, convicted and sentenced as an adult to a life sentence in Oakland County, Michigan, for acts committed when he was a seventeen-year-old minor.  Plaintiff Tipton is currently in the custody of the Michigan Department of Corrections. He is imprisoned at the Ryan Correctional Facility in Wayne County, Michigan, where he is assigned to the lowest custody level possible for an individual serving this sentence.  Jemal has served twenty-three years in prison.

16.     Plaintiff Damion Todd was charged, convicted and sentenced as an adult to a life sentence in Wayne County, Michigan, for acts committed when he was a seventeen-year-old minor.  Plaintiff Todd is currently in the custody of the Michigan Department of Corrections.  He is imprisoned at the Ryan Correctional Facility in Wayne County, Michigan, where he is assigned to the lowest custody level possible for an individual serving this sentence.  Damion has served twenty-four years in adult prison.

17.     Plaintiff Bobby Hines was charged, convicted and sentenced as an adult to a life sentence in Wayne County, Michigan, for acts committed when he was a fifteen-year-old minor. Plaintiff Hines is currently in the custody of the Michigan Department of Corrections.  He is

4

imprisoned at the Earnest C. Brooks Correctional Facility in Muskegon County, Michigan, where he is assigned to the lowest custody level possible for an individual serving this sentence. Bobby has served twenty-one years in adult prison.

18.     Plaintiff Kevin Boyd was charged, convicted and sentenced as an adult to a life sentence in Oakland County, Michigan, for acts committed when he was a sixteen-year-old minor.  Plaintiff Boyd is currently in the custody of the Michigan Department of Corrections.  He is imprisoned at the Thumb Correctional Facility in Lapeer County, Michigan, where he is assigned to the lowest custody level possible for an individual serving this sentence.  Kevin has served fourteen years in adult prison.

19.     Plaintiff Bosie Smith, was charged, convicted and sentenced as an adult to a life sentence in Washtenaw County, Michigan, for acts committed when he was a sixteen-year-old minor.  Plaintiff Smith is currently in the custody of the Michigan Department of Corrections. He is imprisoned at the Chippewa Correctional Facility in Chippewa County, Michigan, where he is assigned to the lowest custody level possible for an individual serving this sentence.  Bosie has served eighteen years in adult prison.

20.     Plaintiff Jennifer Pruitt was charged, convicted and sentenced as an adult to a life sentence in Oakland County, Michigan, for acts committed when she was a sixteen-year-old minor.  Plaintiff Pruitt is currently in the custody of the Michigan Department of Corrections. She is imprisoned at the Women's Huron Valley Correctional Facility in Washtenaw County, Michigan, where she is assigned to the lowest custody level possible for an individual serving this sentence.  Jennifer has served seventeen years in adult prison.

21.     Plaintiff Matthew Bentley was charged, convicted and sentenced as an adult to a life sentence in Huron County, Michigan, for acts committed when he was a fourteen-year-old

minor.  Plaintiff Bentley is currently in the custody of the Michigan Department of Corrections. He is imprisoned at the Richard A. Handlon Correctional Facility in Ionia County, Michigan, where he is assigned to the lowest custody level possible for an individual serving this sentence. Matthew has served twelve years in adult prison.

22.     Plaintiff Keith Maxey was charged, convicted and sentenced as an adult to a life sentence in Wayne County, Michigan, for acts committed when he was a sixteen-year-old minor. Plaintiff Maxey is currently in the custody of the Michigan Department of Corrections.  He is imprisoned at the Thumb Correctional Facility in Lapeer County, Michigan, where he is assigned to the lowest custody level possible for an individual serving this sentence.  Keith has served two years in adult prison.

**Defendants**

23.     Defendant Jennifer Granholm is the Governor of the State of Michigan. Defendant Granholm is invested with executive power pursuant to Art. V § 1 of the Michigan Constitution and is responsible for ensuring compliance with the laws of the State of Michigan. Defendant Granholm resides in Ingham County, Michigan.  Governor Granholm is sued in her official capacity.

24.     Defendant Patricia L. Caruso is the Director of the Michigan Department of Corrections. Defendant Caruso has authority over the Michigan Parole Board pursuant to M.C.L. 791.231a, which determines which Michigan prisoners are eligible for parole.  Defendant Caruso is sued in her official capacity.

25.     Barbara Sampson is the Chair of the Michigan Parole Board.  Under M.C.L. 791.234, the Parole Board determines which prisoners, under their jurisdiction, to parole. Defendant Sampson is sued in her official capacity.

6

## BACKGROUND FACTUAL ALLEGATIONS

**Michigan's Sentencing Framework**

26.     Since abolishing capital punishment, the harshest punishment the State of

Michigan can impose for any crime or series of crimes is a life sentence without the possibility

of parole.

27.     Michigan's Penal Code sets forth the punishments for crimes categorized as first

degree homicides, which include premeditated murder, M.C.L. 750.316(1) (a); felony murder,

M.C.L.  750.316(1)(b); murder of a peace officer, M.C.L. 750.316(1)(c); and second degree

murder, M.C.L. 750.317.

28.     Michigan's Code of Criminal Procedure provides that a person who aids or abets

a murder is punishable as if that person had directly committed the offense.  M.C.L. 767.39.

29.     The punishment for first degree murder, whether it be premeditated, felony

murder or aiding and abetting a murder, is mandatory imprisonment for life.  M.C.L. 750.316(1).

The punishment for second degree murder is imprisonment for life, or any term of years, at the

court's discretion.  M.C.L. 750.317.

30.     Each of the Plaintiffs' judgments of conviction and sentence states that the

Plaintiff was sentenced to imprisonment for life for a conviction under M.C.L. 750.316.

31.     Michigan law grants the Department of Corrections' Parole Board the authority to

release individuals sentenced to life if a prisoner meets certain specified criteria. M.C.L.

791.234.

32.     Since 2008, the Michigan Parole Board has had the authority to grant release to

all individuals sentenced to life imprisonment except for individuals serving a life sentence for a

conviction under M.C.L. 750.316.

33.     Plaintiffs, who are all serving life sentences for convictions under M.C.L. 750.316 are excluded from the Parole Board's authority and jurisdiction.   M.C.L. 791.234(6).

**Punishment of Juveniles in Michigan**

34.     Seventeen-year-old minors are treated as adults in Michigan for criminal prosecution purposes.  Michigan is one of only seven states that automatically subjects seventeen-year-olds to adult charges and punishment of a life sentence without parole for first degree murder.

35.     Michigan's laws and procedures for the trial and punishment of juveniles under the age of seventeen who committed homicide offenses have been amended on two occasions since 1980, resulting in three categories of Plaintiff juveniles depending on the date that they were sentenced.

36.     Irrespective of the scheme for charging, trial, sentencing and process for homicide crimes, all of the Plaintiffs were given a punishment of life without adequate consideration of their juvenile status, are not subject to the jurisdiction of the Parole Board and have never otherwise been afforded a meaningful opportunity for release.

37.     Prior to 1988, when a child under the age of seventeen committed a homicide offense, charges were automatically filed in juvenile court.   If the juvenile was fifteen or sixteen-years-old, a prosecutor could request that the juvenile court waive its jurisdiction over the case and transfer it to the circuit court where the juvenile would be tried and sentenced as an adult.  No child under fifteen years of age could be subject to this judicial waiver procedure.  M.C.L. 712A.4 (1972).

38.     Under this scheme, if a juvenile was transferred to adult court following a waiver hearing and convicted of a violation of M.C.L. 750.316 – including felony murder or aiding and

abetting murder, the judge was required to sentence the juvenile to imprisonment for life in an adult prison.

39.     Plaintiffs Henry Hill, Jemal Tipton and Damion Todd were all charged, tried and sentenced under this pre-1988 scheme.  They were treated as adults at all stages in the process, sentenced to life imprisonment without consideration of their juvenile status.  The Michigan Parole Board does not have jurisdiction to consider them for parole and none of them have been afforded a meaningful opportunity to obtain release in light of their reduced culpability at the time of their offenses, and their unique capacity for change and rehabilitation as compared to adult offenders.

40.     In 1988, the juvenile statutes were amended, eliminating the requirement of judicial waiver hearings and rulings prior to charging juveniles as adults for criminal prosecution.  This amendment permitted a prosecutor to bypass the juvenile court system entirely for certain specified crimes, including crimes under M.C.L. 750.316, and to file charges in adult court against children who were fifteen or sixteen years old.  Juvenile court judges no longer had authority to individually evaluate a child and exercise discretion, and no waiver hearings were required prior to the charging and trial of a juvenile as an adult.

41.     After 1988, children between the ages of fifteen and seventeen who were automatically charged, tried and convicted as an adult for homicide related offenses would then receive one of two limited punishment choices:  the court could either sentence the child as an adult with a mandatory punishment of incarceration for life, or sentence the child as a juvenile, requiring release at age twenty-one.

42.     Under this post-1988 scheme, Plaintiffs Bobby Hines, Kevin Boyd, Bosie Smith and Jennifer Pruitt were all automatically waived to adult court, charged as adults, tried and

sentenced to life imprisonment.  The Michigan Parole Board does not have jurisdiction to consider them for parole and none of them have been afforded a meaningful opportunity for release in light of their reduced culpability at the time of their offenses, and their unique capacity for change and rehabilitation as compared to adult offenders.

43.     In 1996, the juvenile statutes were again amended to expand the automatic waiver of juveniles to adult court and to include fourteen-year-olds.  Since 1996, and continuing to date, all juveniles between the ages of fourteen and eighteen are automatically charged and tried as adults for homicide offenses. M.C.L. 764.1(f)(1).

44.     The 1996 amendments also took away the limited judicial discretion for sentencing juveniles tried as adults, making an adult sentence mandatory for all juveniles charged and tried as adults for certain crimes, including homicide offenses.  M.C.L. 769.1(i).

45.     Since 1996, all juveniles between the ages of fourteen and eighteen are automatically charged, tried and sentenced in the same way as adults for homicide offenses. The age of the individual cannot be considered during the charging, trial or sentencing phase. M.C.L. 769.1(1)(g) and (h).

46.     Plaintiffs Matthew Bentley and Keith Maxey were sentenced to life imprisonment under this post-1996 scheme.  There was never any consideration of their juvenile status.  The Michigan Parole Board does not have jurisdiction to consider them for parole and neither has been afforded a meaningful opportunity for release in light of their reduced culpability at the time of their offenses, and their unique capacity for change and rehabilitation as compared to adult offenders.

## PLAINTIFFS' INDIVIDUAL FACTUAL ALLEGATIONS

### Henry Hill

47.     One evening in 1980, Henry Hill, aged sixteen, went with two of his cousins, Larnell Johnson and Dennis Johnson, to a park in Saginaw, Michigan.  There they saw Anthony Thomas, a young man with whom Henry's cousins had prior conflicts.  Henry's cousins shot at Anthony Thomas.  Henry was reported to have been shooting into the air before he fled the park with his cousin Dennis.  His other cousin, Larnell Johnson, remained, shooting and killing Anthony Thomas.

48.     At the time of the incident, Henry had been attending Saginaw High School where he had undergone psychological testing and found to have a verbal IQ of 69, a performance IQ of 58, and a full scale IQ of 61.  He had a reading word recognition level of 3.6 grade level, a spelling performance at a 3.0 grade level, and an arithmetic ability at 3.3 grade level.  The psychologist who conducted the tests concluded that these results showed signs of a suppressed mental age, and that his general insight and maturity level was that of a pre-adolescent.

49.     Henry was charged for his participation in the Anthony Thomas death with aiding and abetting first degree murder.  Based on this charge, the juvenile court waived its jurisdiction over Henry and one of his co-defendants, sixteen-year-old, Dennis Johnson.  Both stood trial as adults.

50.     Following his trial, Henry was convicted by a jury of first degree aiding and abetting murder.

51.     Henry's pre-sentence investigation report notes that his intelligence classification was in the mentally defective range with an academic ability at the third grade level.  In the

examiner's opinion Henry had the maturity of a nine-year-old child and was motivated by instant gratification, and the desire to be accepted and secure.

52.      The trial court had no discretion to consider Henry's juvenile status, mental age or maturity.  Michigan law required that the trial court charge and punish Henry as if he were an adult and sentence him as such to the mandatory adult sentence of life imprisonment.  Because of the nature of the offense, the Michigan Parole Board has no jurisdiction to consider Henry for parole.  At no stage in his prosecution was Henry's juvenile status considered and, following his conviction, he has never been afforded a meaningful opportunity for release based on his demonstrated maturity and rehabilitation.

53.      Henry has exhausted all of his post-conviction appellate options.  In 2009, he filed a petition for clemency, which is pending.

54.      Henry Hill is now forty-six years old and has served nearly thirty years in prison for his actions.  He has exhausted all prison educational programs and resources available to him. He works and participates in his bible study group for which he consistently receives excellent reports.  Henry has not had a misconduct citation for over a decade and has a custody level II, the lowest possible for his sentence.  He is regarded as a model prisoner.

**Jemal Tipton**

55.      In 1987, Jemal Tipton, then aged seventeen, participated in a robbery at the Hunter's Ridge Condominium Complex in Farmington Hills, Michigan with two adults, Nellie McInnis, a forty-six-year-old acquaintance of his mother, and his older brother, Anthony Parks.

56.      Nellie McInnis drove Jemal and Anthony to where the robbery took place. She gave Jemal a .22 caliber pistol and identified an acquaintance of hers, Edward Chapman, as the person to rob.

12

57.     Armed with the .22 pistol, Jemal approached Edward Chapman and demanded his valuables. A scuffle ensued and the gun went off twice.  One shot struck Edward Chapman, killing him.

58.     Jemal had a difficult upbringing in which he was shuttled between family members and friends during his mother's stays in jail or drug treatment facilities before ending up in the care of Nellie McInnis, a family acquaintance with a long criminal history.

59.     Under Michigan laws then in force, Jemal was automatically charged as an adult with felony murder.  He was tried as an adult, and after trial he was convicted and given the mandatory adult sentence for the offense, life in an adult prison.

60.     In sentencing Jemal, the trial court had no discretion to consider his juvenile status.

61.     Michigan law required that the trial court punish Jemal as if he were an adult and sentence him as such to the mandatory adult sentence of life imprisonment.

62.     Because of the nature of the offense, the Michigan Parole Board has no jurisdiction to consider Jemal for parole.  At no stage in his prosecution was his juvenile status considered and he has never been afforded a meaningful opportunity for release based on this status and his demonstrated maturity and rehabilitation.

63.     Since his incarceration, Jemal has taken every opportunity to rehabilitate himself. He obtained his GED and electrician certification.  He currently earns three dollars a day doing electrician work detail and mentors younger prisoners, encouraging them to continue their education while in prison.

64.     Jemal has exhausted all of his post-conviction appellate options.

13

65.     Since his incarceration, Jemal has been given a total of eight misconduct tickets, the last one occurring over twenty years ago.  Jemal has now served twenty-two years in adult prison.

**Damion Todd**

66.     In 1986, Damion Todd was a seventeen-year-old entering his senior year in high school.  On a Saturday night in August, Damion and three friends drove to an end of the summer party in Detroit, Michigan.  A short while after they had left the party and were driving home, a group of men drove by and shot at them in their car.  Convinced that they were from the party, one of Damion's companions suggested they get his gun and look for the men.

67.     They drove back to the party where they were again shot at. Damion's friend then gave him a shotgun, and told him to fire back.  Damion asserts he intended only to fire at the group that shot at them to scare them.  However, a young woman who was at the party, Melody Rucker, was struck and died shortly thereafter.

68.     At the time of the incident, Damion was a senior at Henry Ford High School in Detroit.  He was captain of his football team and had received Letters of Intent from several Division I AA football schools.  Damion had no prior involvement in any juvenile or adult criminal proceedings.

69.     Damion had volunteered for two summers with the Detroit Police Cadets, a member of the Police Athletic League sports teams, and he was active in his church choir.  He worked part-time in a family restaurant in Southfield, as well as in his family's business.

70.     Damion was automatically charged and tried as an adult with assault with intent to kill, first degree murder and felony firearm possession. Damion was subsequently convicted

on these charges and sentenced to life on the murder charge, 100 to 200 years on the assault

conviction and two years for felony firearm possession.

71.     The Michigan Department of Corrections' psychologist's intake report noted that

persons with profiles as similar to Damion's "tend to be persons with very good institutional and

post-release adjustment" and that he "could have been dealt with just as efficiently and less

expensively through probation in the community," as "by the time Mr. Todd reaches his early

30's, he would have matured out of a youthful exuberance and indiscretions which resulted in the

needless and tragic death of an innocent female bystander."

72.     Damion's sentence for the assault with intent to murder was reversed in 1996 as

being excessive and an abuse of discretion. He was resentenced to ten to thirty years on this

charge.  His mandatory life sentence for his conviction under M.C.L. 750.316, however, remains.

73.     The trial court had no discretion to consider Damion's juvenile status, mental age

or maturity.  Michigan law required that the trial court charge and punish Damion as if he were

an adult and sentence him as such to the mandatory adult sentence of life imprisonment.

Because of the nature of the offense, the Michigan Parole Board has no jurisdiction to consider

Damion for parole.  At no stage in his prosecution was Damion's juvenile status considered, and

he has never been afforded a meaningful opportunity for release based on this status and his

demonstrated maturity and rehabilitation.

74.     Damion has exhausted all of his post-conviction appellate options.  In 2010, he

filed a petition for clemency, which was denied.

75.     Since his incarceration, Damion has obtained certificates in food technology,

custodial maintenance, officiating certificates for basketball, volleyball, baseball and Jaycees (a

worldwide organization that does humanitarian acts such as donating toys to children). He is a

15

member of the Prisoners of Christ Church and in 1987 he received his GED.  Damion has

received only four misconduct tickets in the twenty-four years he has been incarcerated.  He acts

as a mentor to young prisoners and is considered by prison officials to be a respectful, thoughtful

adult who does his job with excellence and with no management problems.

**Bobby Hines**

76.     In 1989, fifteen-year-old Bobby Hines went with nineteen-year-old Christopher

Young and sixteen-year-old Derius Woolfolk to confront James Warner about Warner's alleged

involvement in the theft of a jacket from a boy in the neighborhood.  The boy had reported that

James Warner had threatened him and taken his jacket for money owed on a drug deal.

77.     When the young men saw Warner, Derius Woolfolk fatally shot him and

wounded another man he was with.  Bobby, who touched neither the weapon nor the victims,

was charged as an adult with felony murder.  He was tried and subsequently convicted on this

charge and sentenced to life imprisonment.

78.     The incident occurred in the summer of 1989 shortly after Bobby had completed

his eighth grade education at Brooks Middle School in Detroit, Michigan, where he had regular

attendance and average grades.

79.     Bobby's co-defendants – Christopher Young, who provided the weapon and

sixteen-year-old, Derius Woolfolk, who fatally shot the victim – were both convicted of second

degree murder and are serving parolable life sentences.

80.     Bobby was automatically charged as an adult under Michigan's post-1988 laws

without consideration of his juvenile status, mental maturity or relative culpability.  He was tried

as an adult and upon conviction the court had to choose between punishing him as an adult or

releasing him at age twenty-one.

81.     The pre-sentence investigation report set forth an evaluation of and plan for Bobby stating that there was no dispute as to what occurred but that due to the "seriousness of the present offenses this writer feels the services and facilities in the adult program would offer more time and circumstance to rehabilitate this defendant.  For these reasons and for the best interest of the public welfare and security, it is recommended this defendant be sentenced to a period of incarceration in an adult facility."

82.     The court had no discretion but to sentence Bobby to "a period of incarceration in an adult facility."  Michigan law required that the trial court either sentence him as a juvenile to be released at age twenty-one or sentence him as an adult to a mandatory sentence of life.  Bobby was sentenced to serve "the rest of [his] natural life to hard labor and solitary confinement." Because of the nature of the offense, the Michigan Parole Board has no jurisdiction to consider Bobby for parole, and he has never been afforded a meaningful opportunity for release based on his juvenile status and his demonstrated maturity and rehabilitation.

83.     Bobby is assigned to the lowest custody level available for his sentence. He has now served twenty-one years in prison on a life sentence.

**Kevin Boyd**

84.     In 1994, Kevin Boyd, then aged sixteen, was convicted of first degree premeditated murder for his role in the murder of his father, Kevin Boyd, Sr. by his mother, Lynn Boyd.

85.     Kevin's mother and father had been separated for six years on August 5, 1994, when Kevin's mother and her lover asked Kevin to give them the keys to his father's apartment, telling him they were going to kill his father.  Kevin gave his mother the keys and did not report

his mother's threat to the police.  The next day Kevin went to his father's apartment, found him murdered and immediately called the police.

86.    Four months later, on October 18, 1994, Kevin's mother confessed to the murder and was arrested.  Kevin was also arrested at this time.  He was interrogated without counsel or a guardian present.

87.    Kevin admitted to having given the keys to his mother knowing that she was planning to murder his father and therefore takes responsibility for his role in the murder.  He maintains he did not participate in the actual stabbing incident.

88.    Kevin was automatically charged under Michigan's post-1988 laws and tried as an adult without a judicial waiver hearing.

89.    By the time of his sentencing Kevin had turned nineteen, giving the court a difficult choice: to sentence Kevin as a juvenile with mandatory release in two years or to sentence him as an adult which would result in a mandatory life sentence.

90.    Despite positive reviews for Kevin from supervisors at the juvenile facility where he was detained pending trial and sentencing, opinions that he was nonviolent and unlikely to be a repeat offender and his involvement being based on his youthful desire to please his mother, it was felt that three years would be inadequate for the juvenile system to fully rehabilitate Kevin.  Kevin was therefore sentenced to life imprisonment.

91.    Kevin appealed and the Michigan Court of Appeals reversed his sentence, finding that the trial court had abused its discretion in sentencing Kevin as an adult, as Kevin was "a model prisoner, an excellent student, amenable to treatment, not a danger to the public and remorseful for his actions."  Four months later, with little explanation, the appeals court reversed itself.

18

92.     Michigan law required that Kevin be sentenced to mandatory life imprisonment. Because of the nature of the offense, the Michigan Parole Board has no jurisdiction to consider Kevin for parole and, he has never been afforded a meaningful opportunity for release based on his juvenile status and his demonstrated maturity and rehabilitation.

93.     Kevin has subsequently exhausted all of his post-conviction appellate options. His petition for clemency is pending.

94.     During his incarceration, Kevin has received his GED, several trade certificates and is considered a model prisoner. Kevin has now served fourteen years in adult prison and is a Level II prisoner, the lowest custody level for his sentence.

**Bosie Smith**

95.     In 1992, Bosie Smith, then aged sixteen, was involved in the stabbing death of an adult male during a fight.

96.     Although the adult male who initiated the fight was eight years older and twice the size of the 103 pound Bosie, the jury rejected Bosie's claim of self-defense and convicted him on the first degree murder charge.

97.     Bosie was born with fetal alcohol syndrome.  He was abandoned by both his parents and was raised by his maternal grandmother.  At the time of his conviction, he had completed schooling through the eighth grade.  Bosie was a member of his school's wrestling team and local church youth group.

98.     Bosie was tried as an adult under Michigan's automatic transfer laws.  He was charged and tried as an adult without a judicial waiver hearing or any consideration of his juvenile status, mental age or maturity.

99.     Both the case evaluator and the judge were troubled by the idea of sentencing Bosie to life imprisonment.  Nevertheless, the case evaluator recommended adult sentencing because the only other option was four years in the juvenile system.  The trial judge stated that he would sentence Bosie to a term of years if he had that option but that he was bound by the statute, which required a mandatory life sentence.

100.    On appeal, the conviction was affirmed but the case was remanded upon a finding that the trial court abused its discretion in sentencing Bosie as an adult.  The Court of Appeals ordered Bosie to undergo psychological testing to assist the trial court in its sentencing. However, the Supreme Court reversed the Court of Appeals remand order, finding that there was no clear error or abuse of discretion by the trial court.

101.    Michigan law required that the trial court sentence Bosie to the mandatory adult sentence of life imprisonment.  Because of the nature of the offense, the Michigan Parole Board has no jurisdiction to consider Bosie for parole and, he has never been afforded a meaningful opportunity for release based on his juvenile status and his demonstrated maturity and rehabilitation.

102.    Since his incarceration, Boise has completed his GED and has been involved in numerous prison groups including, Commitment to Change, Career Scope, 2nd Chance at Life, and Retired Greyhound Prison Program.  Boise has also earned certificates pertaining to "Communication Skills," "Diversity," "Critical Thinking," "Prisoner Rape Elimination Act Education," and "Blood Bourn."   Presently, Bosie is in the process of completing training in custodial maintenance, conflict resolution, and substance abuse counseling training.

103.    Bosie has exhausted all his post-conviction appellate options.

104.    Bosie has been imprisoned in an adult facility for seventeen years and throughout this time has maintained Level II custody, the lowest allowed for his offense.

**Jennifer Pruitt**

105.    In 1992, Jennifer Pruitt, then aged sixteen, participated in a plan to rob one of her neighbors in Pontiac, Michigan.

106.    Jennifer was a runaway from sexually and physically abusive parents when she committed her crime.  She had no prior criminal record.

107.    At the time of the robbery, Jennifer was staying with Donnell Miracle, a twenty-three-year-old neighbor.  While Miracle initiated the robbery plan, Jennifer was the one who singled out the neighbor, Elmer Heichel, as the person to rob.

108.    Elmer Heichel let Jennifer and Miracle into his house at 1:30 a.m. on August 30, 1992.  Jennifer went to use the bathroom and then went into the back room to steal the neighbor's wallet.  When she came out of the room she witnessed Miracle stabbing Elmer Heichel.

109.    Jennifer did not participate in the stabbing.  She also reported the incident and her involvement to the police that same day, leading to the subsequent arrest of Miracle.

110.    The trial of Jennifer Pruitt was delayed.  Jennifer's remorse was so strong that she became self-injurious and was committed to a psychiatric facility where she was deemed incompetent to stand trial for over a year.

111.    Under Michigan law, Jennifer was automatically charged as an adult with first degree murder and armed robbery.  She was convicted of felony murder and sentenced as an adult based upon the pre-sentence investigation report's assertion that the adult facilities would afford greater opportunities for her rehabilitation.  However, the report failed to acknowledge

that her rehabilitation and eventual return to society was impossible because under Michigan law, the court had no discretion to give her any sentence other than life in prison.

112.    Given the nature of the offense for which Jennifer was convicted, the Michigan Parole Board does not have jurisdiction to consider her for parole, and she has never been afforded a meaningful opportunity for release based on her juvenile status and her demonstrated maturity and rehabilitation.

113.    During Jennifer's initial years in adult prison, she was raped by two male correctional officers.  She has also undergone counseling to assist her recovery from post-traumatic stress disorder.

114.    Jennifer has exhausted all of her post-conviction appellate remedies.  Her petition for clemency was denied.

115.    Jennifer has now served eighteen years of a mandatory sentence of life imprisonment.  In the last ten years, Jennifer completed her GED and all recommended rehabilitation programs offered her.  Jennifer maintains a Level II security classification, the minimum for her offense, and she has been described as an "inmate role model and excellent worker, dependable, honest, sincere and reliable."

**Matthew Bentley**

116.    In 1997, Matthew Bentley was a fourteen-year-old ninth grader at Bad Axe High School in Michigan when he decided to break into a house in his neighborhood.

117.    Matthew was the youngest child of his mother and father's second marriage, and he was five when his father was incarcerated for sexual abuse of his sister.  He was then raised by his mother.  Matthew had a difficult time focusing at school, and in grade school he was diagnosed with Attention Deficit Disorder.  He was prescribed Ritalin and he took the

22

medication until his mother could no longer afford it.  He was an active member of the Boy Scouts, young marines, and his local church.  He helped with his brother-in-law's business, swam, wrote poetry, played basketball and babysat his nieces and nephews.

118.    Matthew began drinking alcohol at the age of eleven and using marijuana at age thirteen.  In 1996, he was prescribed Zoloft for depression and Dexedrine for hyperactivity.  His use of drugs and behavior resulted in foster care placement shortly before he committed his offense.

119.    On the day of the incident, Matthew left school early and broke into a home he thought was unoccupied.  While he was in the house, he found the owner's gun, which he took with him while rummaging through the house for other valuables. When unexpectedly confronted by the owner of the house, Matthew shot and fatally wounded her before fleeing the scene.

120.    Matthew was arrested the same day and, under the newly enacted Michigan law lowering the age for automatic waiver to adult prosecution to fourteen, was charged as an adult with felony murder, home invasion, and felony firearm possession.

121.    Tried as an adult, Matthew was convicted of all three offenses and given the mandatory sentence of life imprisonment.  The judge stated at his sentencing hearing that if he had a choice he would have given Matthew a term of years which would have afforded him the opportunity for release in fifteen years.

122.    In addition to lowering the age for automatic adult prosecution to fourteen, the 1996 laws under which Matthew was charged and sentenced eliminated any discretion to consider Matthew's juvenile status at sentencing.  Matthew was charged, tried, convicted and sentenced without any discretion to consider his juvenile status, mental age or maturity.

Michigan law required that the trial court punish Matthew as if he were an adult and sentence him to the mandatory adult sentence of life imprisonment.  Because of the nature of the offense, the Michigan Parole Board has no jurisdiction to consider Matthew for parole.

123.   At no stage of his criminal prosecution and sentencing was Matthew's juvenile status considered, and he has never been afforded a meaningful opportunity for release based on this status and his demonstrated maturity and rehabilitation.

124.   Since being imprisoned, Matthew has earned his GED and a trade certificate in custodial maintenance.  He acts as a mentor and a guardian to incoming young prisoners who are targeted by older sexually predatory inmates.

125.   Matthew has exhausted his state appellate options and has filed a clemency petition.

126.   Matthew has now served thirteen years in prison.  He is currently a Level II custody level prisoner, the lowest allowed for his offense.

**Keith Lenard Maxey**

127.   In 2007, Keith Maxey was sixteen when he accompanied two adult acquaintances to meet some men to buy marijuana.  Three people were shot during the drug deal, including Keith.  Keith and one of his co-defendants were subsequently charged with attempting to rob the drug dealers and in the death of one of them, who later died from his wound.

128.   Keith's co-defendant,  Tyrell Adams, a twenty-year-old who shot the victims and committed the murder, pled to second degree murder and is serving a term of years. The second co-defendant Antoine Bailey, who was also a twenty-year-old, was charged and convicted of assault with intent to commit murder and sentenced to fifteen years.

129.    Keith, the only juvenile involved in the incident, was automatically charged and tried as an adult and convicted of first degree felony murder.

130.    Keith was then sentenced as an adult to a mandatory life sentence.

131.    Keith appealed his conviction and sentence but the Court of Appeals affirmed the lower court's order.  His application for leave to appeal to the Michigan Supreme Court was denied.

132.    The 1996 laws under which Keith was charged and sentenced eliminated any discretion to consider Keith's juvenile status at sentencing.  Keith was charged, tried, convicted and sentenced without any consideration of his juvenile status, mental age or maturity.  Michigan law required that the trial court punish Keith as if he were an adult and sentence him to the mandatory adult sentence of life imprisonment.  Because of the nature of the offense, the Michigan Parole Board has no jurisdiction to consider Keith for parole, and he has never been afforded a meaningful opportunity for release based on his juvenile status and his demonstrated maturity and rehabilitation.

133.    Keith has exhausted his state appellate options.

134.    Keith has been imprisoned for two years.  During this time he has not received any misconduct citations, is taking classes to complete his GED and is classified to the lowest security level allowed for his offense.

### GENERAL FACTUAL ALLEGATIONS

135.    Each of the Plaintiffs committed their offenses before the age of eighteen.

136.    Each of the Plaintiffs was sentenced as an adult and was given the mandatory punishment imposed on adults for first degree murder, life imprisonment.

137.    Under current Michigan law, the Parole Board does not have jurisdiction over any of the Plaintiffs because they are serving a life sentence for a conviction of first degree murder under M.C.L. 750.316.  No one convicted of such an offense can be considered for parole.

138.    Under Michigan's scheme for punishing juveniles as adults for first degree homicide offenses, each of the Plaintiffs cannot be considered for parole, and none of them have been afforded a meaningful opportunity for release based on their juvenile status and demonstrated maturity and rehabilitation.

139.    Plaintiffs, who were all juveniles at the time they committed their offenses, did not have the same maturity and sense of responsibility as adults.

140.    The State of Michigan recognizes this relative lack of maturity and responsibility based on their age in other areas of the law by prohibiting them from voting, entering into valid contracts, serving on juries, joining the armed forces, smoking tobacco, marrying without parental consent, leaving school, working full time, or applying for a driver's license without first undergoing youth-specific driver education classes.

141.    Plaintiffs, as juveniles, were more vulnerable to adult influences and susceptible to peer pressure than adults.

142.    Plaintiffs, as juveniles, were more likely to act impetuously without regard for consequences as compared to adults.

143.    Plaintiffs, as juveniles, have a greater capacity for change, growth and rehabilitation than adults.

144.    Plaintiffs' ineligibility for parole discounts and renders immaterial maturity, good behavior, character and rehabilitation for purposes of consideration of release.

145.    The punishment schemes under which the Plaintiffs were imprisoned do not provide for a meaningful opportunity to obtain release upon demonstration of maturity and rehabilitation.

146.    The imprisonment of Plaintiffs for life without affording them a meaningful opportunity for release once they have grown and matured fails to take into consideration whether Plaintiffs' actions were as a result of transient immaturity and whether they have been rehabilitated.

147.    Plaintiffs' youth means that they will be punished more severely than adults given the same sentence because they will serve more years and a greater percentage of their lives in prison than adult offenders.

148.    There is no legitimate penological justification for imposing life sentences on Plaintiffs without also affording them a meaningful opportunity for release because such a denial fails to serve any of the recognized objectives of punishment.

149.    Michigan is one of only two states in the United States that require that juveniles convicted of first degree homicide offenses be given the harshest adult penalty available in the state without any consideration of lesser culpability or discretion to impose lesser punishment based upon juvenile status.

150.    Michigan's system accounts for over 15% of all juveniles in the United States serving a sentence of life without possibility of parole.

151.    The majority of states that allow for the imposition of life sentences without parole on juveniles, provide for discretion at some stage of the proceeding, and require consideration of the individual's age, maturity and lesser culpability prior to charging and sentencing.

152.    Michigan is in the minority of states in imposing this harshest punishment on juveniles who aid and abet, but do not themselves commit, a homicide.

153.    Of the two states that impose the harshest sentence available for adult criminal behavior as a mandatory punishment, Michigan has over six times the number of youth serving this sentence.

154.    Michigan is in the minority of states that automatically impose this punishment on juveniles as young as fourteen.

155.    The United States is the only country in the world that permits and imposes a life without possibility of parole sentence on persons who commit their offense prior to the age of eighteen.

156.    The United Nations Human Rights Committee identified this practice as non-compliant with Article 24(1) of the International Covenant on Civil and Political Rights (ICCPR).

157.    The United States is a party to the ICCPR, but has reserved the right to treat juveniles as adults only in "exceptional circumstances."

158.    Michigan's laws do not constitute such an exceptional circumstance, as they presumptively treat all juveniles involved in homicide offenses as adults and sentence all juveniles as if they were adults for such involvement.

159.    In December 2006, the United Nations General Assembly passed a resolution, 185-1 (United States), calling upon all nation states to abolish life imprisonment without possibility of release for those persons below eighteen years of age at the time they committed the offense.

160.    In 2008, the United Nations Committee on the Elimination of Racial Discrimination in its consideration of U.S. compliance with the Convention on the Elimination of All Forms of Racial Discrimination found that the sentencing of juveniles violated key provisions of the Convention, and called upon the United States to end the practice and to review the situation of prisoners currently serving such sentences.

161.    Article 37(a) of the United Nations Convention on the Rights of the Child, Nov. 20, 1989, 1577 U.N.T.S. 3 (entered into force Sept. 2, 1990), ratified by every member state except the United States and Somalia, explicitly prohibits the imposition of "life imprisonment without the possibility of release … for offenses committed by persons below eighteen years of age."

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION
## (CRUEL & UNUSUAL PUNISHMENT)

162.    Plaintiffs incorporate by reference paragraphs 1 through 161 above as if set forth fully herein.

163.    Defendants' current and continuing failure to afford Plaintiffs a meaningful opportunity for release upon demonstrating their maturity and rehabilitation constitutes punishment with no legitimate penological justification, and as such constitutes cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution as incorporated by the Fourteenth Amendment and enforceable through 42 U.S.C. § 1983.

164.    Michigan's statutory scheme, which denies Plaintiffs a meaningful opportunity for release, violates the Eighth Amendment by failing to recognize the difference in moral culpability between adults and juveniles who commit first degree homicide offences under M.C.L. 750.316.

165.    Michigan's statutory scheme, which denies Plaintiffs a meaningful opportunity for release, results in juveniles receiving a longer sentence than an adult for the same offense, in violation of the Eighth Amendment to the United States Constitution.

166.    M.C.L. 791.234(6), which strips the Michigan Parole Board of jurisdiction over prisoners serving a life sentence for offenses under M.C.L. 750.316, is unconstitutional as applied to Plaintiffs.

## SECOND CAUSE OF ACTION
### (DUE PROCESS)

167.    Plaintiffs incorporate by reference paragraphs 1 through 166 above as if set forth fully herein.

168.     Defendants' current and continuing failure to afford Plaintiffs a meaningful opportunity for release upon demonstrating their growth, maturity and rehabilitation constitutes a denial of due process of law in violation of the Fourteenth Amendment to the United States Constitution as enforceable through 42 U.S.C. § 1983.

169.     Michigan's statute depriving the parole board of jurisdiction over prisoners serving life sentences for certain offenses committed before their eighteenth birthday constitutes a violation of Plaintiffs' rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

170.    M.C.L. 791.234(6), which denies persons, convicted of homicide offenses under M.C.L. 750.316, any opportunity to demonstrate their maturity and rehabilitation, is unconstitutional as applied to Plaintiffs.

## THIRD CAUSE OF ACTION
## (DUE PROCESS)

171.    Plaintiffs incorporate by reference paragraphs 1 through 170 as if set forth fully herein.

172.    Michigan's statute that automatically waives juveniles to adult court for trial and sentencing, without any consideration of juvenile status or discretion to recognize their juvenile status for purposes of imposing the harshest punishment constitutes a violation of Plaintiffs' rights under the Due Process Clause of the Fourteenth Amendment of the United States Constitution.

173.    Michigan law requiring the imposition of the harshest adult punishment on a juvenile, based on the nature of the offense without affording them an opportunity or a hearing to demonstrate their lesser culpability at the time they committed the offense and their maturity and rehabilitation, constitutes a violation of Plaintiffs' rights under the Due Process Clause of the Fourteenth Amendment of the United States Constitution.

174.    Michigan's statutory scheme which requires that juveniles as young as fourteen years of age who are charged with certain felonies to automatically be tried as adults and, if convicted, to be sentenced without discretion to life without parole, denies Plaintiffs due process of law in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution by failing to provide for any hearing to consider their juvenile status and its relationship to their culpability and potential for rehabilitation.

175.    Michigan's statutory system that punishes juveniles who are convicted of homicide offenses under M.C.L. 750.316 with a life sentence, and without providing an opportunity to demonstrate that they lack the requisite intent necessary for such a conviction

31

violates Plaintiffs' rights under the Due Process Clause of the Fourteenth Amendment of the United States Constitution.

## FOURTH CAUSE OF ACTION
## (CUSTOMARY INTERNATIONAL LAW)

176.    Plaintiffs incorporate by reference paragraphs 1 through 175 as if set forth fully herein.

177.    Defendants' current and continuing failure to afford Plaintiffs a meaningful opportunity for release, based on their status and their demonstrated maturity and rehabilitation constitutes punishment with no legitimate penological justification, and as such constitutes cruel, inhuman or degrading treatment or punishment in violation of customary international law as reflected *inter alia* in the Universal Declaration on Human Rights, the ICCPR and the U.N. Convention on the Rights of the Child, which extend special measures of protection to children and prohibit life imprisonment without the possibility of release for offenses committed by persons below eighteen years of age  and other forms of cruel, inhuman or degrading treatment or punishment.

178.    Defendants' violations of customary international law are actionable pursuant to 42 U.S.C. § 1983 in that customary international law has been held, since the Constitution's adoption, to be part of the laws of the United States.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs pray for a judgment against the Defendants and each of them requests that this Court:

a.    Issue a declaratory judgment that the continued incarceration of Plaintiffs without affording them a meaningful opportunity to obtain release, based on their juvenile status and

demonstrated maturity and rehabilitation, violates Plaintiffs' rights guaranteed by the United States Constitution, statutory law, and customary international law;

      b.      Issue a declaratory judgment that M.C.L. 791.234(6), as applied to Plaintiffs, violates the Eighth and Fourteenth Amendments to the United States Constitution and customary international law;

      c.      Order Defendants to provide Plaintiffs with a meaningful opportunity to obtain release upon them attaining the age of majority and every five years thereafter;

      d.      Retain jurisdiction over this action until such time as the Court is satisfied that the unlawful laws, policies, practices, rules, acts and omissions complained of herein have been satisfactorily rectified;

      e.      Award Plaintiffs attorney fees and costs; and

      f.      Award such other and further relief as seems just and proper.

      Respectfully submitted,

DATED:   November 17, 2010

/s/Deborah LaBelle
Deborah LaBelle (P31595)
Counsel for Plaintiffs
221 N. Main St., Ste. 300
Ann Arbor, MI 48104
734.996.5620
deblabelle@aol.com

/s/Ronald J. Reosti
RONALD J. REOSTI (P19368)
Counsel for Plaintiffs
23880 Woodward Ave.
Pleasant Ridge, MI 48069-1133
248.691.4200
ron.reosti@gmail.com

/s/Michael J. Steinberg
Michael J. Steinberg (P43085)
Kary L. Moss (P49759)
Daniel S. Korobkin (P72842)
American Civil Liberties Union Fund
   of Michigan
2966 Woodward Avenue
Detroit, MI 48201
(313) 578-6814
msteinberg@aclumich.org
dkorobkin@aclumich.org
kmoss@aclumich.org

/s/Steven M. Watt
Steven M. Watt (Admission Pending)
Human Rights Program

Vanita Gupta (Admission Pending)
Center for Justice

Robin Dahlberg (Admission Pending)
Racial Justice Program

Dennis Parker (Admission Pending)
Racial Justice Program

Jay Rorty (Admission Pending)
Criminal Law Reform Project

American Civil Liberties Union Foundation
125 Broad Street, 17th Floor
New York, NY 10004
(212) 519-7870
swatt@aclu.org
vgupta@aclu.org
rdahlberg@aclu.org
dparker@aclu.org
jrorty@aclu.org