# UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

|  | 100 EAST FIFTH STREET, ROOM 540 |  |
|---|---|---|
| Deborah S. Hunt | POTTER STEWART U.S. COURTHOUSE | Tel. (513) 564-7000 |
| Clerk | CINCINNATI, OHIO 45202-3988 | www.ca6.uscourts.gov |

Filed: May 11, 2016

Mr. Brandon J. Buskey
Mr. Ezekiel Reifler Edwards
Mr. Steven M. Watt
ACLU
125 Broad Street, 18th Floor
New York, NY 10004

Mr. Joseph T. Froehlich
Ms. Margaret A Nelson
Mr. Bernard Eric Restuccia
Office of the Attorney General of Michigan
P.O. Box 30736
Lansing, MI 48909

Mr. Daniel S. Korobkin
Mr. Michael Jay Steinberg
American Civil Liberties Union Of Michigan
2966 Woodward Avenue
Detroit, MI 48201

Ms. Deborah A. LaBelle
221 N. Main Street, Suite 300
Ann Arbor, MI 48104-0000

American Civil Liberties Union Of Michigan
2966 Woodward Avenue
Detroit, MI 48201

Re: Case No. 13-2661/13-2705, *Henry Hill, et al v. Rick Snyder, et al*
Originating Case No. : 5:10-cv-14568

Dear Counsel,

The court today announced its decision in the above-styled cases.

   Enclosed is a copy of the court's opinion together with the judgment which has been entered in conformity with Rule 36, Federal Rules of Appellate Procedure.

                                        Yours very truly,

                                        Deborah S. Hunt, Clerk

                                        Cathryn Lovely
                                        Deputy Clerk

cc:  Mr. David J. Weaver

Enclosures

Mandate to issue.

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 16a0112p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

_____

HENRY HILL; JEMAL TIPTON; DAMION TODD; BOBBY
HINES; KEVIN BOYD; BOSIE SMITH; JENNIFER
PRUITT; MATTHEW BENTLEY; KEITH MAXEY;
GIOVANNI CASPER; JEAN CARLOS CINTRON; NICOLE
DUPURE; DONTEZ TILLMAN,

    *Plaintiffs-Appellees/Cross-Appellants*,

    *v.*

RICK SNYDER, in his official capacity as Governor
of the State of Michigan; DANIEL H. HEYNS, in his
official capacity as Director, Michigan Department
of Corrections; THOMAS R. COMBS, in his official
capacity as Chair, Michigan Parole Board, jointly
and severally,

    *Defendants-Appellants/Cross-Appellees*.

No. 13-2661/2705

Appeal from the United States District Court
for the Eastern District of Michigan at Ann Arbor.
No. 5:10-cv-14568—John Corbett O'Meara, District Judge.

Argued: January 21, 2015

Decided and Filed: May 11, 2016

Before: MERRITT, STRANCH, and DONALD, Circuit Judges.

_____

## COUNSEL

**ARGUED:** B. Eric Restuccia, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellants/Cross-Appellees. Deborah LaBelle, Ann Arbor, Michigan, for Appellees/Cross-Appellants. **ON BRIEF:** Margaret A. Nelson, Joseph T. Froehlich, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellants/Cross-Appellees. Deborah LaBelle, Ann Arbor, Michigan, Brandon J. Buskey, Steven M. Watt, Ezekiel R. Edwards, AMERICAN CIVIL LIBERTIES UNION

1

FOUNDATION, New York, New York, Daniel S. Korobkin, Michael J. Steinberg, AMERICAN CIVIL LIBERTIES UNION FUND OF MICHIGAN, Detroit, Michigan, for Appellees/Cross-Appellants.

_____

**OPINION**

_____

JANE B. STRANCH, Circuit Judge. This long-running case returns us to the difficult topic of juvenile crime and punishment. Our return, however, is to a new legal landscape, one defined by the Supreme Court's developing jurisprudence recognizing that the unique characteristics of youth matter in determining the propriety of their punishment. This case began when Michigan charged and tried the named plaintiffs as adults for acts they committed while under the age of 18. Each received a conviction for first-degree murder and a mandatory sentence of life in prison. Michigan laws in place at the time rendered anyone convicted of first-degree murder ineligible for parole, meaning that the plaintiffs in this case effectively received mandatory sentences of life in prison without the possibility of parole for acts they committed as children.

Plaintiffs filed suit in federal district court in 2010 challenging, among other things, the constitutionality of the Michigan statutory scheme that barred them from parole eligibility. Since that time, at least three important legal events have come to pass. First, the Supreme Court held in *Miller v. Alabama*, 132 S. Ct. 2455 (2012), "that mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments.'" *Id.* at 2460. Second, Michigan amended its juvenile offender laws in light of *Miller*, but made some of those changes contingent upon either the Michigan Supreme Court or the United States Supreme Court announcing that *Miller*'s holding applied retroactively. *See* Mich. Comp. Laws Ann. §§ 769.25, 769.25a (2014). And, third, the United States Supreme Court recently held in *Montgomery v. Louisiana*, 136 S. Ct. 718 (2016), that *Miller*'s prohibition on mandatory life without parole for juvenile offenders is indeed retroactive.

The district court wisely (and presciently) reached the conclusion that *Miller* should apply retroactively when it ruled on the parties' cross-motions for summary judgment in 2013.

That conclusion also drove the district court's issuance of an injunctive order against defendants requiring compliance with *Miller*. In light of the legal changes described above, however, and for the reasons that follow, we **VACATE** the challenged district court orders and **REMAND** for the district court to address these issues under the legal landscape established by *Montgomery v. Louisiana*, *Miller v. Alabama*, and this opinion.

## I. BACKGROUND

A description of the underlying litigation—and of the intervening changes in federal and state law—is necessary to understand the current legal landscape in this case and our reasons for remanding to the district court.

### A. Pleadings & Motion to Dismiss

In 2010, nine original plaintiffs—all of whom were juvenile offenders who had been convicted of first-degree murder under section 316 of Michigan's penal code—filed the instant lawsuit against Michigan state officials pursuant to 42 U.S.C. § 1983. Plaintiffs alleged that certain "Michigan laws, policies and practices" relevant to their sentences "violate[d] the Eighth and Fourteenth Amendments of the United States Constitution and customary international law." Specifically, plaintiffs pointed to penal code section 316, which mandates a life sentence for anyone convicted of first-degree murder, *see* Mich. Comp. Laws Ann. § 750.316(1) (2010) ("A person who commits any of the following is guilty of first degree murder and shall be punished by imprisonment for life. . . ."), and section 234 of the Michigan corrections code, which excludes those convicted under penal code section 316 from the Michigan Parole Board's jurisdiction, rendering them ineligible for parole as a matter of state law, *see* Mich. Comp. Laws Ann. § 791.234(6) ("A prisoner sentenced to imprisonment for life for [first degree murder in violation of Michigan penal code section 316] is not eligible for parole[.]").

Defendants filed an answer followed by a motion to dismiss, arguing that plaintiffs' claims were procedurally barred and that they had "fail[ed] to state a claim under the Eighth Amendment's prohibition against cruel and unusual punishment, the Fourteenth Amendment's due process guarantees, [or] customary international law." The district court granted in part and denied in part defendants' motion on July 15, 2011, holding that the applicable statutes of

limitation barred all but one of the nine named plaintiffs—Keith Maxey—from seeking relief, and that Maxey had stated a claim for Eighth Amendment violations but not for violations of the Fourteenth Amendment or international law. Accordingly, the district court dismissed all of the plaintiffs' claims except for Maxey's Eighth Amendment claim. Plaintiffs filed an amended complaint in February 2012 that, as relevant here, added four new plaintiffs: Giovanni Casper, Jean Carlos Cintron, Nicole Dupure, and Dontez Tillman. All four, like Maxey, were juvenile offenders convicted of first-degree murder serving mandatory life sentences while ineligible for parole, and all four joined Maxey's Eighth Amendment challenge to Michigan's statutory scheme.

### B. *Miller v. Alabama*

On June 25, 2012, less than six months after plaintiffs filed their amended complaint, the United States Supreme Court decided *Miller v. Alabama* and the landscape of this litigation shifted, recognizing the constitutional concerns raised by plaintiffs. In *Miller*, two 14-year-old Alabama offenders challenged the constitutionality of their mandatory sentences to life imprisonment without the possibility of parole, and the Supreme Court held for the first time "that the Eighth Amendment['s prohibition on cruel and unusual punishment] forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders." 132 S. Ct. at 2469. The Court explained that "[b]y making youth (and all that accompanies it) irrelevant to imposition of that harshest prison sentence, such a scheme poses too great a risk of disproportionate punishment." *Id.* The Court noted, moreover, that while sentencing courts were not completely foreclosed from sentencing juvenile offenders to life without parole—so long as they first considered "children's diminished culpability and heightened capacity for change" and other attendant characteristics of youth, *id.*—such a sentence would likely only be appropriate for "the rare juvenile offender whose crime reflects irreparable corruption." *Id.* (quoting *Roper v. Simmons*, 543 U.S. 551, 573 (2005)).

### C. Cross-Motions for Summary Judgment & Subsequent Orders

In August 2012, two months after the Supreme Court's decision in *Miller*, the parties in the instant case filed cross-motions for summary judgment. Plaintiffs, relying on *Miller*, argued that section 234(6) of Michigan's corrections code—which barred plaintiffs from eligibility for

parole—was unconstitutional as applied to juveniles and asked the court for declaratory and injunctive relief that would require Michigan to provide them with a meaningful and realistic opportunity for release. Defendants, for their part, insisted that *Miller* did not apply retroactively to plaintiffs and, even if it did, that the district court lacked authority to dictate the sentencing and parole procedures of the State. The district court granted-in-part and denied-in-part plaintiffs' motion and denied defendants' cross-motion in an opinion issued on January 30, 2013. Specifically, the court held that: (1) *Miller* applied to plaintiffs; (2) Michigan's statute barring plaintiffs from parole eligibility was unconstitutional under *Miller* and the Eighth Amendment; and (3) plaintiffs were entitled to some form of equitable relief from the challenged parole statute. In order to determine what form of relief was most appropriate, the court directed the parties to provide supplemental briefing addressing "the procedures that [the] court may equitably put in place to ensure that Plaintiffs receive a fair and meaningful opportunity to demonstrate that they are appropriate candidates for parole."

It appears that defendants interpreted the district court's ruling to apply only to the named plaintiffs in the instant action and took the position that the State remained free to enforce the challenged parole statute against any other juvenile offenders convicted of first-degree murder. In response to plaintiffs' motion for clarification, the district court issued an order on August 12, 2013, stating that its January ruling declaring section 234(6) of the Michigan corrections code unconstitutional was intended to apply to "every person convicted of first-degree murder in the State of Michigan as a juvenile . . . who was sentenced to life in prison" without the possibility of parole, not just the named plaintiffs in this case. The court also addressed a motion for class certification that plaintiffs had filed as an alternative to their motion for clarification; in so doing, the district court relied on precedent from the Ninth and Second Circuits to support its conclusion that "[p]laintiffs are not required to bring a class action to obtain declaratory or injunctive relief applicable to other similarly situated individuals." The court therefore denied plaintiffs' motion for class certification as moot in light of its ruling on the scope of its January order.

In November 2013, the district court issued an injunctive order that lies at the heart of the parties' dispute on appeal. Plaintiffs alleged that defendants were continuing to enforce the

challenged parole statue against them and were depriving plaintiffs of access to rehabilitation programs based on their purported ineligibility for parole. The district court held a status conference to address plaintiffs' concerns and afterward, on November 26, 2013, the court issued an "Order Requiring Immediate Compliance with *Miller*" directing defendants to take certain specified actions related to considering all juvenile offenders sentenced to mandatory life in prison for parole.

### Cross-Appeals and Stays

Defendants filed a notice of appeal on December 5, 2013. They also asked the district court to stay its injunctive order pending appeal, but the district court denied their request. Something of a procedural morass followed, as plaintiffs moved to dismiss defendants' appeal for lack of jurisdiction, defendants moved this court for a stay of the district court's injunctive order, and plaintiffs filed a protective cross-appeal. A three-judge panel of this court denied plaintiffs' motion to dismiss and granted defendants' motion for a stay. Defendants then moved to dismiss plaintiffs' cross-appeal for lack of jurisdiction, and that motion is still pending.

### Changes to Michigan Law

In 2014, while the parties continued to litigate this appeal, the Michigan legislature passed Public Act No. 22 in response to the Supreme Court's holding in *Miller* that mandatory life without parole for juvenile offenders is unconstitutional. *See* 2014 Mich. Pub. Act 22. Specifically, the legislature created two new statutory provisions regarding juvenile offender sentencing: sections 25 and 25a of chapter IX of the Michigan code of criminal procedure. *See* Mich. Comp. Laws Ann. §§ 769.25, 769.25a (2014). Section 25 applies to juvenile offenders who committed certain enumerated offenses—including first-degree murder under section 316 of the penal code which, as explained, carries a mandatory life sentence—and who were convicted after *Miller* or whose cases were still pending or subject to appeal as of June 25, 2012, the date *Miller* was decided. Section 25 requires prosecutors to file motions if they intend to seek new sentences of life without parole for these juvenile offenders and provides for court hearings to determine whether or not such a sentence is appropriate under *Miller* in each individual's case. *See* Mich. Comp. Laws Ann. § 769.25(6) ("If the prosecuting attorney files a motion under subsection (2), the court shall conduct a hearing on the motion as part of the sentencing process.

At the hearing, the trial court shall consider the factors listed in *Miller v. Alabama* . . . and may consider any other criteria relevant to its decision, including the individual's record while incarcerated."). If, however, the prosecution does not file a motion within the designated time period, "the court shall sentence the [juvenile offender] to a term of years . . . for which the maximum term shall be not less than 60 years and the minimum term shall be not less than 25 years or more than 40 years." Mich. Comp. Laws Ann. §§ 769.25(4), (9).

Section 25a, meanwhile, clarifies that "the procedures set forth in section 25 . . . do not apply to any case that is final for purposes of appeal on or before June 24, 2012"—*i.e.*, any conviction that was final before *Miller*. Mich. Comp. Laws Ann. § 769.25a(1). Instead, and as relevant here, section 25a states that:

> If the state supreme court or the United States supreme court finds that the decision of the United States supreme court in *Miller v. Alabama* . . . applies retroactively to all defendants who were under the age of 18 at the time of their crimes, and that decision is final for appellate purposes, the determination of whether a sentence of imprisonment for a violation set forth in section 25(2) of this chapter [including first-degree murder under section 316 of the penal code] shall be imprisonment for life without parole eligibility or a term of years as set forth in section 25(9) of this chapter shall be made by the sentencing judge or his or her successor as provided in this section.

Mich. Comp. Laws Ann. § 769.25a(2). Section 25a goes on to provide time frames for resentencing this category of juvenile offenders. Prosecuting attorneys would have "180 days after the date the supreme court's decision becomes final" to "file motions for resentencing in all cases in which the prosecuting attorney will be requesting the court to impose a sentence of imprisonment for life without the possibility of parole." Mich. Comp. Laws Ann. § 769.25a(4)(b). If such a motion were filed, "[a] hearing on the motion shall be conducted as provided in section 25[.]" *Id.* In the absence of such a motion, however, section 25a provides that "the court shall sentence the [juvenile offender] to a term of imprisonment for which the maximum term shall be 60 years and the minimum term shall be not less than 25 years or more than 40 years." Mich. Comp. Laws Ann. § 769.25a(4)(c).

In August 2015, the Michigan Court of Appeals heard a challenge to section 25 and declared the new state statutory scheme unconstitutional in part. *See People v. Skinner*, ---

N.W.2d ---, No. 317892, 2015 WL 4945986, at *12–20 (Mich. Ct. App. Aug. 20, 2015). In particular, the court held that in order to resentence a juvenile offender "to life without parole, . . . a jury" and not a judge "must make findings on the *Miller* factors as codified at MCL 769.25(6) to determine beyond a reasonable doubt whether the juvenile's crime reflects irreparable corruption." *Id.* at *19. *Skinner* was not appealed to the Michigan Supreme Court, and the State of Michigan has conceded in subsequent litigation that *Skinner* is binding authority. *See People v. Zuniga*, No. 324157, 2016 WL 620137, at *2 (Mich. Ct. App. Feb. 16, 2016).

### *Montgomery v. Louisiana*

Returning to the instant litigation, this court issued an order on October 29, 2015 holding this case in abeyance pending the Supreme Court's decision in *Montgomery v. Louisiana*. We explained that "[t]he Supreme Court recently heard oral argument in *Montgomery v. Louisiana* . . . concerning whether *Miller v. Alabama* . . . adopts a new substantive rule that applies retroactively on collateral review to juveniles whose convictions were final when *Miller* was decided" and, consequently, that *Montgomery* might "have a significant effect on these appeals" as many of the named plaintiffs' convictions were final before *Miller*.

The Supreme Court issued its opinion in *Montgomery v. Louisiana*, 136 S. Ct. 718 (2016), in late January 2016. Like the district court in the instant case, the Supreme Court concluded that *Miller*'s constitutional holding is indeed retroactive:

Because *Miller* determined that sentencing a child to life without parole is excessive for all but the rare juvenile offender whose crime reflects irreparable corruption, it rendered life without parole an unconstitutional penalty for a class of defendants because of their status—that is, juvenile offenders whose crimes reflect the transient immaturity of youth. As a result, *Miller* announced a substantive rule of constitutional law. Like other substantive rules, *Miller* is retroactive because it necessarily carr[ies] a significant risk that a defendant—here, the vast majority of juvenile offenders—faces a punishment that the law cannot impose upon him.

*Montgomery*, 136 S. Ct. at 734 (alteration in original) (citations omitted). The Supreme Court further explained that "[a] conviction or sentence imposed in violation of a substantive rule is not just erroneous but contrary to law and, as a result, void." *Id.* at 731. Thus, the Court observed,

"[i]t follows, as a general principle, that a court has no authority to leave in place a conviction or sentence that violates a substantive rule, regardless of whether the conviction or sentence became final before the rule was announced." *Id.* Put another way, "[t]here is no grandfather clause that permits States to enforce punishments the Constitution forbids." *Id.*

In *Montgomery*, the Supreme Court once again recognized "that 'children are constitutionally different from adults for purposes of sentencing.'" *Id.* at 733 (quoting *Miller*, 132 S. Ct. at 2464). The Court also expressed concern that "*Miller*'s conclusion that the sentence of life without parole is disproportionate for the vast majority of juvenile offenders raises a grave risk that many are being held in violation of the Constitution." *Id.* at 736. Regarding remedies for these likely widespread violations, the Supreme Court noted that "[a] State may remedy a *Miller* violation by permitting juvenile homicide offenders to be considered for parole, rather than by resentencing them." *Id.*; *see also id.* ("Giving *Miller* retroactive effect, moreover, does not require States to relitigate sentences, let alone convictions, in every case where a juvenile offender received mandatory life without parole."). "Extending parole eligibility to juvenile offenders does not impose an onerous burden on the States," the Court explained, "nor does it disturb the finality of state convictions." *Id.* "Those prisoners who have shown an inability to reform will continue to serve life sentences. The opportunity for release will be afforded to those who demonstrate the truth of *Miller*'s central intuition—that children who commit even heinous crimes are capable of change." *Id.* Indeed, the Court concluded, juvenile offenders sentenced to mandatory life without parole "must be given the opportunity to show their crime did not reflect irreparable corruption; and if it did not, their hope for some years of life outside prison walls must be restored." *Id.* at 736–37.

## DISCUSSION

Following the Supreme Court's issuance of *Montgomery*, both parties filed letters with this court addressing the impact of *Montgomery* on this case. Defendants suggest that *Montgomery*'s holding on *Miller*'s retroactivity triggers section 25a, meaning that "all of the named plaintiffs here, as well as all juvenile offenders convicted of first-degree murder whose cases were final in Michigan at the time of *Miller*, will be subject to resentencing" in accordance with that statute. Consequently, defendants insist that "plaintiffs' federal case is now moot and

should be dismissed." Plaintiffs disagree, arguing that Michigan's legislative fix "is not a facially sufficient remedy" for what everyone appears to agree are *Miller* violations in the wake of *Montgomery*, and asserting that "this Court should affirm and remand for the [district] court to enforce its order requiring the state to propose a mechanism that provides a meaningful opportunity for release for youth serving mandatory life without parole sentences in Michigan." It is worth noting that the parties appear to agree on at least one thing post *Montgomery*: plaintiffs' mandatory sentences to life in prison with no hope of parole cannot stand. *See Montgomery*, 136 S. Ct. at 731 ("[A] court has no authority to leave in place a conviction or sentence that violates a substantive rule [of constitutional law], regardless of whether conviction or sentence became final before the rule was announced.").

The district court has not yet had an opportunity to consider the legislative changes wrought by Michigan Public Act No. 22—portions of which the Michigan courts have already declared unconstitutional, *see Skinner*, 2015 WL 4945986 at *12–20—or the Supreme Court's guidance in *Montgomery*. Nor has it been able to address whether its injunctive order might co-exist with these authorities or, if not, how the order might be revised to do so. Moreover, even if defendants were correct that these changes in the legal landscape could be said to effectively moot plaintiffs' claims regarding section 234(6) of Michigan's correctional code, "in instances where [a case's] mootness is attributable to a change in the legal framework governing the case, and where the plaintiff may have some residual claim under the new framework that was understandably not asserted previously," the Supreme Court has counseled that the best "practice is to vacate the judgment and remand for further proceedings in which the parties may, if necessary, amend their pleadings or develop the record more fully." *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 482 (1990). We find this the proper procedure to follow.

After careful consideration of the substantive issues at stake, the current procedural posture of this case, and the significant intervening legal changes described above, we vacate the district court's challenged orders and remand with instructions to provide the parties leave to amend their pleadings and to supplement the record as needed, particularly with respect to the current statutory scheme governing plaintiffs' sentences and eligibility for parole. We vacate the court's prior orders to enable the court to address remedies in the context of the new legal

landscape and because it is necessary in light of our instructions to allow the parties leave to amend the pleadings. If, for example, plaintiffs file a second amended complaint directly challenging Michigan's 2014 legislative fixes, there may be no question that the eight plaintiffs the district court previously dismissed are entitled to pursue such a claim.

We also recognize that there is some confusion regarding this circuit's precedent on whether or not class certification is required to extend declaratory and injunctive relief to non-plaintiffs. In *Craft v. Memphis Light, Gas & Water Division*, 534 F.2d 684 (6th Cir. 1976), we affirmed the district court's denial of a motion for class certification, stating that a ruling on the individual plaintiff's claim for relief would "'accrue to the benefit of others similarly situated' and, consequently . . . '[n]o useful purpose would be served by permitting this case to proceed as a class action[.]'" *Id.* at 686 (citation omitted). We distinguished *Craft*, however, in *Ball v. Wagers*, 795 F.2d 579 (6th Cir. 1986). There we reversed a denial of class certification, explaining that "denying class certification after [an] extensive, unexplained delay in this case, which ultimately led to the mooting of the named plaintiffs' claims, renders the [*Craft*] 'lack of need' rationale relied upon by the magistrate and the district court unpersuasive." *Ball*, 795 F.2d at 581. We further noted that the claims presented in *Ball* "may be the kind that could evade judicial review absent a class certification[,]" and we remanded with instructions for the district court to reconsider whether or not class certification was appropriate. *Id.* In *Tesmer v. Granholm*, 333 F.3d 683 (6th Cir. 2003) (en banc), we seemingly distanced ourselves from *Craft* yet again, holding that "[d]eclaratory judgment is effective as to only the plaintiffs who obtained it" and that "[w]hen a class has not been certified, the only interests of concern are those of the named plaintiffs." *Id.* at 701. But the Supreme Court reversed *Tesmer* for lack of standing, *see Kowalski v. Tesmer*, 543 U.S. 125, 134 (2004), and our circuit has yet to revisit the subject. Based on our class certification jurisprudence subsequent to *Craft*, on remand the district court should reconsider whether class certification may indeed be necessary and appropriate in this case, particularly in light of defendants' apparent history of refusing to apply the court's orders to anyone other than the named plaintiffs.

## CONCLUSION

*Montgomery* and *Miller* make clear that courts may not impose mandatory life sentences without parole on juvenile offenders regardless of when an offender's conviction became final. For the foregoing reasons, we **VACATE** the district court's orders and **REMAND** with instructions to grant the parties leave to amend the pleadings and supplement the record. Defendants' motion to dismiss plaintiffs' cross-appeal is **DENIED AS MOOT**.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

Nos. 13-2661/2705

HENRY HILL; JEMAL TIPTON; DAMION TODD;
BOBBY HINES; KEVIN BOYD; BOSIE SMITH;
JENNIFER PRUITT; MATTHEW BENTLEY;
KEITH MAXEY; GIOVANNI CASPER; JEAN
CARLOS CINTRON; NICOLE DUPURE;
DONTEZ TILLMAN,

    Plaintiffs - Appellees/Cross - Appellants,

    *v.*

RICK SNYDER, in his official capacity as Governor of
the State of Michigan; DANIEL H. HEYNS, in his official
capacity as Director, Michigan Department of Corrections;
THOMAS R. COMBS, in his official capacity as Chair,
Michigan Parole Board, jointly and severally,

    Defendants - Appellants/Cross - Appellees.

**FILED**
May 11, 2016
DEBORAH S. HUNT, Clerk

Before: MERRITT, STRANCH, and DONALD, Circuit Judges.

**JUDGMENT**

On Appeal from the United States District Court
for the Eastern District of Michigan at Ann Arbor.

THIS CAUSE was heard on the record from the district court and was argued by counsel.

IN CONSIDERATION WHEREOF, it is ORDERED that the district court's orders are VACATED, and the case is REMANDED with instructions to grant the parties leave to amend the pleadings and supplement the record.  IT IS FURTHER ORDERED that Defendants' motion to dismiss Plaintiffs' cross-appeal is DENIED AS MOOT.

**ENTERED BY ORDER OF THE COURT**

_____
Deborah S. Hunt, Clerk