UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HENRY HILL, et al.,

       Plaintiffs,                     Case No. 10-cv-14568
                                                     Hon. Mark A. Goldsmith
vs.

GRETCHEN WHITMER, et al.,

       Defendants.
_____/

## OPINION & ORDER
## GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Dkt. 267)

The Supreme Court has held that a mandatory sentence of life imprisonment for a juvenile homicide offender violates the Eighth Amendment's prohibition on cruel and unusual punishment. Montgomery v. Louisiana, 136 S. Ct. 718 (2016); Miller v. Alabama, 567 U.S. 460 (2012). A sentencing scheme must provide juvenile offenders "some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation." Miller, 567 U.S. at 479 (quoting Graham v. Florida, 560 U.S. 48, 75 (2010)). In this class action, Plaintiffs and class members (together, "Plaintiffs") are juvenile homicide offenders who, prior to the Supreme Court's decisions, were sentenced to mandatory life without parole. Now, in light of Montgomery and Miller, they are being resentenced and, for the first time, have the opportunity to appear before the parole board.

Count VI of Plaintiffs' second amended complaint, the sole remaining claim in this case, alleges that Defendants have "refused and failed to provide programming, education, training and rehabilitation opportunities necessary for Plaintiffs to demonstrate their suitability for release," 2d

1

Am. Comp. ¶ 226 (Dkt. 130), which "has resulted in Plaintiffs' loss of liberty[ and] extended their incarceration, causing them physical injuries and severe emotional distress," id. ¶ 228, in violation of the Eighth and Fourteenth Amendments. Defendants Heidi Washington and Michael Eagen have moved for summary judgment on this claim (Dkt. 267).[1] The motion is fully briefed, and because oral argument will not aid the decisional process, the motion will be decided based on the parties' briefing. See E.D. Mich. L.R. 7.1(f)(2); Fed. R. Civ. P. 78(b). For the reasons that follow, the Court grants in part and denies in part Defendants' motion.

## I. BACKGROUND

In 2012, the Supreme Court held that mandatory life-without-parole sentences for juveniles violate the Eighth Amendment's prohibition on cruel and unusual punishment. Miller v. Alabama, 567 U.S. 460, 470 (2012); see also Montgomery v. Louisiana, 136 S. Ct. 718, 736 (2016) (holding that Miller applies retroactively). The Michigan legislature, which had previously excluded youth offenders convicted of first-degree murder from the jurisdiction of the Michigan Parole Board, see Michigan Compiled Laws §§ 750.316, 791.234(6)(a), amended its statutory scheme to address Miller and Montgomery. The new provision mandates resentencing for juveniles who were convicted of first-degree homicide offenses before Miller and who received mandatory life-without-parole sentences. Mich. Comp. Laws § 769.25a.

The statute requires these individuals to be resentenced either to life without parole or to a term of years. Id. § 769.25a(2). Prosecutors may seek a life-without-parole sentence by filing a motion specifying the grounds for imposing such a punishment. See id. § 769.25a(4)(b). The

---

[1] Washington is the Director of the Michigan Department of Corrections and Eagen is the Chair of the Michigan Parole Board. Defendants Gretchen Whitmer, Governor of the State of Michigan, and Dana Nessel, Attorney General of the State of Michigan, are also listed on the docket as having brought the instant motion, but the Second Amended Complaint lists Count VI as seeking relief only against Washington and Eagen. 2d Am. Compl. at 55.

2

sentencing court must then hold a hearing on the motion, at which "the trial court shall consider the factors listed in Miller v. Alabama, and may consider any other criteria relevant to its decision, including the individual's record while incarcerated." Id. §§ 769.25(6) (internal citations omitted); 769.25a(4)(b). If no such motion is filed, the court must resentence the individual to a minimum term of 25-40 years and a maximum term of 60 years. Id. § 769.25a(4)(c). At the time the instant motion was filed, approximately 235 Plaintiffs were still awaiting resentencing. See Mandatory Juvenile Life Without Parole – Parole Board Working Document, Ex. A to Defs. Mot. (listing 235 individuals who have yet to be resentenced).[2]

Plaintiffs who have yet to be resentenced are denied "core" rehabilitative programming. See, e.g., McNeal Dep., Ex. 5 to Pls. Resp., at 63 ("You are currently a lifer and are unable to participate in these programs.") (Dkt. 274-5). "Core" programming for inmates consists of thirteen programs for men and thirteen programs for women. See Policy Directive 05.01.100, Ex. E to Defs. Mot. (listing programs). This includes the Violence Prevention Program, Michigan Sex Offender Programming, Thinking for a Change, and substance abuse programs, among others. Eagen Dep., Ex. F to Defs. Mot., at 109; Washington Dep., Ex. 4 to Pls. Resp., at 33-34 (Dkt. 274-4).[3] The programs have certain specific criteria, and when an individual meets those criteria, the

---

[2] Plaintiffs provide a different count in their response to the motion for summary judgment, saying that 199 Plaintiffs have yet to be resentenced. See List of Plaintiffs Awaiting Resentencing, Ex. 1 to Pls. Resp. (Dkt. 274-1). This discrepancy has no bearing on the Court's decision. The Court further notes that this opinion relies on the numbers set forth in Defendants' summary judgment motion, rather than the numbers referred to in Defendants' exhibit to their reply brief. The numbers reflected in this exhibit are not so different from the numbers provided in the original motion so as to affect the Court's decision.

[3] MDOC offers other programs that are not considered "core," but these are only vaguely described by the parties. For example, Plaintiffs refer to "self-help classes and prison work assignments" as non-core programs. Pls. Resp. at 16 (Dkt. 274). Defendants' brief discusses "various MDOC work activities," vocational classes, and programs such as Cage Your Rage, Chance for Life, Thinking for Change, and substance abuse programs. Defs. Mot. at 9-10 (Thinking for Change,

3

core program is recommended for him or her when he or she enters the prison. Eagen Dep. at 109; Washington Dep. at 34.

Core programming is made available to a particular prisoner based on his or her proximity to the prisoner's earliest release date ("ERD") (also known as "parole board jurisdiction date," or "PBJ"). Defs. Mot. at 4-5 (citing Eagen Dep. at 71).

Plaintiffs who have not yet been resentenced do not have an ERD/PBJ date, and, therefore, are not put into core programs. Defendant Michael Eagen, chairperson for the Michigan Parole Board, explained that "we don't know if they're going to get a parole decision, and . . . some of these services are offered to other prisoners and I wouldn't want to be pushing out people that might have ERD dates that are going to be paroled out from getting those programs." Eagen Dep. at 71. Kyle Kaminski, Legislative Liaison for MDOC, further explained that Plaintiffs "were often advised that they wouldn't be placed in the program because the program groups were set based on the Parole Board Jurisdiction Date, and we program those closest to their Parole Board Jurisdiction Date first, and so the lifers were not at the top of the list to go to programming." Kaminski Dep., Ex. D to Defs. Mot., at 41. Plaintiffs contend that the denial of core programming violates their Eighth and Fourteenth Amendment rights.

Defendants admit that it is possible that prisoners who have not completed certain programming may be directed by the parole board to complete that programming before they can be released on parole, even though the programming has not yet been made available to them.

---

however, is listed as a "core program" by Policy Directive 05.01.100. Ex. E to Defs. Mot.). Testimony from Kyle Kaminski, Legislative Liaison for MDOC, also suggests that vocational programming, education programming (GED, special education, English as a Second Language), a basic financial program called "Money Smart," and a digital literacy training program offered by Microsoft are non-core programs. See Kaminski Dep., Ex. D to Defs. Mot., at 53-56, 83-84. Nonetheless, its precise meaning is not material to the Court's decision.

Defs. Mot. at 5. Defendants point out, however, that once a Plaintiff is resentenced, he or she then has an ERD/PBJ date, and is able to participate in core programming in accordance with this date. Defs. Reply at 4 (Dkt. 277).

Defendants represent that the vast majority of Plaintiffs who have received a parole decision – 68 out of 72 parole-eligible class members – were released on parole. Defs. Mot. at 3 (citing Mandatory Juvenile Life Without Parole – Parole Board Working Document). The four Plaintiffs who were parole eligible, but denied immediate parole, will be able to appear again before the parole board anywhere from one to five years after their initial appearance. Id. at 2-3. The majority of Plaintiffs, however – 235 out of a class of 373 – have yet to be resentenced. Id. at 3.

## II. STANDARD OF REVIEW

A motion for summary judgment under Federal Rule of Civil Procedure 56 shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists when there are "disputes over facts that might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "[F]acts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380 (2007). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Once the movant satisfies its initial burden of demonstrating the absence of any genuine issue of material fact, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue of material fact. Scott, 550 U.S. at 380; Celotex Corp. v. Catrett, 477 U.S. 317, 323

(1986). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," Scott, 550 U.S. at 380 (quoting Matsushita, 475 U.S. at 586), as the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment," id. (quoting Anderson, 477 U.S. at 247-248) (emphasis in original); see also Babcock & Wilcox Co. v. Cormetech, Inc., 848 F.3d 754, 758 (6th Cir. 2017) ("A mere scintilla of evidence or some metaphysical doubt as to a material fact is insufficient to forestall summary judgment.").

### III. ANALYSIS

Plaintiffs argue that Defendants' denial of core programming deprives them of their constitutional right to a meaningful opportunity to obtain release at both resentencings and parole hearings. Their argument is based on the Supreme Court's holdings in Graham and Miller. Graham held that life without parole for juvenile offenders convicted of nonhomicide offenses was unconstitutional. The Court found that the Eighth Amendment requires states to afford a nonhomicide juvenile offender a "meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation," and that "[a] life without parole sentence improperly denies the juvenile offender a chance to demonstrate growth and maturity." Graham, 560 U.S. at 73, 75. In Miller, the Court stated that "Graham's reasoning implicates any life-without-parole sentence imposed on a juvenile, even as its categorical bar relates only to nonhomicide offenses." 567 U.S. at 472. As Plaintiffs argue that Graham and Miller have implications at both resentencing and parole hearings, the Court will address each proceeding in turn.

#### A. Resentencings

Currently, some 235 Plaintiffs are awaiting resentencing, either to a term of years or, again, to life imprisonment. Mandatory Juvenile Life Without Parole – Parole Board Working

Document.  The statute governing resentencings provides that judges are to consider "the factors listed in Miller v Alabama," Mich. Comp. Laws § 769.25(6), which, although not explicitly stated in the statute, include "chronological age and its hallmark features," "the family and home environment," "the circumstances of the homicide offense," whether the defendant "might have been charged and convicted of a lesser offense if not for incompetencies associated with youth," and "the possibility of rehabilitation," Miller, 567 U.S. at 477.  A judge also "may consider any other criteria relevant to its decision, including the individual's record while incarcerated."  Mich. Comp. Laws § 769.25(6).  Plaintiffs argue that because the judges overseeing the resentencings are to consider "the individual's record while incarcerated," Plaintiffs' inability to show that they have completed recommended programming is detrimental to their chances of receiving a lesser sentence.  See Pls. Resp. at 5-6 (Dkt. 274).

Plaintiffs do not explain why their education while incarcerated, work history, relationships with staff and other inmates, behavioral history, and completion of non-core programs would not also be considered by the sentencing judge.  There is nothing in Miller or the statute that mandates that the judge even consider core programming.  Further, to the extent that a Plaintiff has been prevented from taking a certain core program, his or her attorney can bring this fact to the judge's attention.  Plaintiffs admit that the judges are not giving "exclusive consideration" to completion of programming, but argue that when the stakes are so high (because Plaintiffs may face the possibility of life without parole at resentencing), "any significant barrier to Plaintiffs' ability to demonstrate rehabilitation is constitutionally significant."  Pls. Resp. at 15.  Notably, Plaintiffs do not cite anything for this proposition.  Plaintiffs reject Defendants' argument that Plaintiffs should be able to point to their participation in "non-core programming" to demonstrate maturation, and say that this depends on "the subjective views of counsel about what kind of programming is

7

sufficient to demonstrate rehabilitation and maturity for their release[.]" Id. at 16. But Plaintiffs' counsel does the same thing, arguing that it is only core programming that matters, and that non-core programming does not. Plaintiffs rely on Eagen's and Washington's deposition testimony, discussed infra, to explain why core programming is important, but Eagen and Washington spoke about the parole context – not about what is important to judges.

Further, the evidence put forth does not support Plaintiffs' theory that judges are focused on Plaintiffs' completion of recommended core programs. Of the 139 Plaintiffs who have been resentenced, only two have been resentenced to life without parole, and twenty-two have received the maximum minimum sentence of forty years. Mandatory Juvenile Life Without Parole – Parole Board Working Document. The transcript that Plaintiffs point to in order to show that "completion of rehabilitative programs is often the only way an individual can objectively demonstrate their maturity and rehabilitation," Pls. Resp. at 16 – that of Henry Hill – undercuts their own argument. The judge who resentenced Hill to a minimum term of thirty-four years and six months made no mention of core programs; instead he observed that Hill had educated himself, had taken several non-core courses, and developed a strong work ethic while incarcerated:

> When [Hill] entered the prison system, he had third grade reading and math skills. Once incarcerated, he received remedial education for the first time. He learned to decode words with the help of a teacher. He studied the dictionary in his cell and learned to break down words into syllables. He failed the GED three times, but persevered and ultimately passed the test in 1986. In addition to completing his GED. He has also taken courses in basic writing, small business, and legal research. He's also been a productive worker within the prison system. Over the years, he's worked in the kitchen as a head cook, a unit porter, and in the laundry. In the work assignment evaluation dated April 5, 2017, the defendant was described as an excellent worker who does well without direct supervision and never complains when asked to do extra work. He has received vocational certificates for food . . .

8

Hill Resentencing Tr., Ex. 7 to Pls. Resp., at 19 (Dkt. 274-7). Thus, Hill's resentencing hardly establishes that barriers to core programming impact judges at resentencing.

Plaintiffs also cite the resentencing transcript for Damion Todd, and argue that the court extended Todd's incarceration by two years for him to complete core programming. Pls. Resp. at 5. But Plaintiffs only include one page from the sentencing transcript as an exhibit, and this excerpt shows only that the prosecutor was arguing for an extra two years. See Todd Tr., Ex. 8 to Pls. Resp. (Dkt. 274-8) ("The People after reviewing everything feels that an appropriate sentence would be thirty years to sixty years on the first degree murder. That would give Mr. Rucker [sic, Todd] an extra almost two years in prison to get the programming that he hasn't been eligible for to date."). Defendants' spreadsheet reflects that Todd was resentenced to a term of ten to thirty years; he was released on parole on May 15, 2018, a little more than a year after his March 29, 2017 resentencing.[4]

Thus, the facts do not support a finding that, at resentencing, Plaintiffs are being denied their meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation because they are unable to take core programming. Defendants are granted summary judgment as to this issue.

### B. Parole Board Hearings

---

[4] Plaintiffs point out that "nearly all" of the resentencings that have taken place so far are those for whom the prosecutor did not seek a life sentence. Pls. Resp. at 14. For individuals for whom prosecutors are seeking life without parole, Plaintiffs say demonstrating rehabilitation "could" mean the difference between a term of years sentence and another sentence of life without parole. Id. at 14-15. But this is mere speculation of what judges might consider; the Court is unwilling to find, based solely on Plaintiffs' speculations, that the failure to receive core programming denies them the opportunity to show that they have matured and been rehabilitated. Plaintiffs' argument that core programming would help prisoners avoid misconduct in prison, which would in turn affect their resentencing outcomes, Pls. Resp. at 15-16, is similarly speculative and attenuated.

The Court now turns to the question of whether the denial of core programming affects Plaintiffs' constitutional rights at the parole board hearings. Under Michigan's resentencing scheme, Plaintiffs face either life without parole or a maximum sentence of sixty years. See Mich. Comp. Laws § 769.25a(4)(c). Thus, those sentenced to a term of years face a potential maximum of sixty years' imprisonment, which Plaintiffs assert exceeds the life expectancy of the average Michigan prisoner. Without an opportunity to obtain release through parole, then, Michigan's statutory scheme provides for a mandatory de facto life sentence.

A logical reading of Graham and Miller suggests that a mandatory term of years for a juvenile homicide offender that exceeds his or her lifespan violates the Eighth Amendment. "If a juvenile offender's life sentence, while ostensibly labeled as one 'with parole,' is the functional equivalent of a life sentence without parole, then the State has denied that offender the 'meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation' that the Eighth Amendment demands." Hayden v. Keller, No. 10-3123, 2015 WL 5773634, at *8 (E.D.N.C. Sept. 25, 2015); see also Maryland Restorative Justice Initiative v. Hogan, No. 16-1021, 2017 WL 467731, at *21 (D. Md. Feb. 3, 2017) (acknowledging that Hayden involved prisoners convicted of nonhomicide offenses, but finding its reasoning informative "in light of the promise in Graham and Montgomery that a meaningful opportunity for release extends to all juvenile offenders, except for those 'whose crimes reflect permanent incorrigibility'") (citing Montgomery, 136 S. Ct. at 734). Thus, although Defendants are correct that there is no right to parole generally, Greenholtz v. Inmates of Nebraska Penal and Correctional Complex, 442 U.S. 1, 7 (1979), these Plaintiffs are entitled to a parole hearing that provides them with "some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation," Graham, 560 U.S. at 75.

The Court is unable to determine from the record before it whether Plaintiffs are currently denied such a meaningful opportunity at their parole hearings. The evidence presented does not make clear whether core programming is in fact required for Plaintiffs to be granted parole.

Defendants argue that that a lack of core programming does not harm Plaintiffs' parole chances. So far, forty-nine Plaintiffs have been granted parole and nineteen have been discharged. Only four Plaintiffs who are parole eligible have been denied parole. Thus, 68 out of 72 Plaintiffs who received a decision from the parole board were granted parole. Defendants point out that this 94.44% success rate exceeds the general parole rate for individuals thought to have a "high" probability of parole based on their parole guideline score, which is 82%. See Mich. Dep't of Corrections, Parole Board Member Totals 1/1/2018 – 7/1/2018, Ex. K to Defs. Mot.

Defendants contend that the parole board may direct a Plaintiff to complete certain programming before he or she can be released on parole, but the Board may also waive a core programming requirement. Defs. Mot. at 5-6. They rely on testimony from Eagen, who stated that "[w]e know it's an issue that [Plaintiffs] haven't been able to get into [core programming]," and that "I don't think that it holds up a positive decision . . . not all of them have been in core programs, so it hasn't been held against them." Eagen Dep. at 76. Eagen also testified that the parole board has the discretion to waive core programming in any parole decision. Id. at 107. Defendants assert that fourteen of the paroled Plaintiffs had not completed any core programming, yet were still released on parole. Defs. Mot. at 6.

Defendants attach as an exhibit the decision resulting from Plaintiff Willie Servant's parole interview, where he was denied release on parole. The Board stated the following as "substantial and compelling reasons for guideline departure":

> Having denied his guilt for years, P now admits his role yet continued to minimize his responsibility and shifts blame for his

11

>choices onto his codefendant. His level of insight and accountability
>are not commensurate with the gravity of his crime. Depart[.]

Servant – Notice of Decision, Ex. B to Defs. Mot. The Board recommended that Servant (1) "Demonstrate responsible behavior by earning positive reports in any programs you may be involved in"; (2) "Demonstrate responsible behavior by avoiding situations which result in misconduct citations"; (3) "Demonstrate leadership qualities by participation in department sanctioned activities"; (4) "Demonstrate responsible behavior by earning good block or staff reports of conduct in the housing unit"; and (5) "Comply with any recommendation for psychological screening and/or therapeutic programming when referred." Id. There is no indication here that any failure by Servant to complete core programming led to his denial of release.[5]

In response, Plaintiffs stress the importance of core programming and paint it as the sole key that will unlock the prison doors. They rely on testimony from Eagen and Defendant Heidi Washington, Director of MDOC. Eagen testified that "completion of a core program provides tools to a prisoner that will help in rehabilitation" and agreed that completion of the core programs would "demonstrate something positive toward rehabilitation[.]" Id. at 79-80. Washington also agreed that these are "valuable programs," Washington Dep. at 34, and that "the reason you want to have people complete these programs before they see the Parole Board[] is to increase the likelihood of their parole, or at least not being denied or deferred because they haven't completed this[,]" id. at 82. She agreed that it would "increase their likelihood of parole" and "increase their likelihood of success," as the "whole reason for the program[] is to help them be successful on the outside." Id. at 83.

---

[5] Neither party has provided information regarding the Board's decision to deny parole to the three other Plaintiffs.

Plaintiffs also claim that "the parole board denies release to prisoners who have not completed rehabilitative programming that the board and MDOC has recommended for them." Pls. Resp. at 12. As support, they cite an affidavit from Richard Stapleton, the former Administrator for the Office of Legal Affairs for MDOC, who stated:

> The Parole Board often denies release to prisoners who have not completed programs that are recommended to address assaultive behavior offenses. However, prisoners serving life sentences are excluded from many programming opportunities during their incarceration. Lifers are placed at the bottom priority on waiting lists for programming because they are not expected to be paroled and thus are routinely not offered programs to prepare them for release. When they are ultimately considered for parole release, a prisoner serving a life sentence is significantly disadvantaged by having been denied the opportunity to engage in programming activities.

Stapleton Aff., Ex. 3 to Pls. Supp. Br. re 1/30/2013 Op. & Order, ¶ 22 (Dkt. 67-4).

Plaintiffs also note that Plaintiffs Christopher Wiley and Lorenzo Harrell were told by the parole board that the Board would defer its decision while they completed the Violence Prevention Program ("VPP"), a core program. Wiley Dep., Ex. 9 to Pls. Resp., at 7-8 (Dkt. 274-9); Harrell Dep., Ex. 10 to Pls. Resp., at 6-7 (Dkt. 274-10). Wiley had his parole board interview on May 28, 2018, completed VPP, and was released on parole on January 8, 2019. Wiley Dep. at 7; Parole Board Grid, Ex. A to Defs. Reply (Dkt. 277-2). Harrell similarly enrolled in VPP following his parole interview, and was granted parole with a release date of February 12, 2019. Harrell Dep. at 7; Parole Board Grid.

It is not clear to this Court whether or how Defendants' policy to deny core programming to individuals without an ERD/PBJ date affected the Plaintiffs who were released on parole. Plaintiffs claim that there is "no evidence that core programming was and remained <u>recommended</u> for" the class members who were released on parole without having completed any core programs. Pls. Resp. at 17 (emphasis in original). The Court agrees. It appears that core programming <u>is</u> a

13

requirement to be released on parole for at least some Plaintiffs, as both Wiley and Harrell had their parole decisions deferred for months while they completed violence-prevention core programs. Further, Richard Stapleton has stated that the parole board often denies release to prisoners who have not completed core programs intended to address assaultive behavior, which seems to comport with the decisions to defer Wiley and Harrell's releases.

On the other hand, it may be that the Plaintiffs who were released on parole did have unfulfilled recommendations for core programs that the parole board decided, in its discretion, to waive or otherwise overlook. Perhaps the Plaintiffs released on parole were able to demonstrate their maturity and rehabilitation in other ways. But without additional information about the core programs taken by Plaintiffs who were released on parole, the Court cannot determine whether the denial of core programs to Plaintiffs without an ERD/PBJ date affects their opportunity to obtain release on parole.

Even if the Court were to assume that core programming <u>is</u> required for an individual to be released on parole when that individual has a recommendation for core programming, the significance of such an assumption is similarly unclear. Would Defendants' policy of denying core programming to individuals without an ERD/PBJ date then deprive Plaintiffs of a meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation, in violation of the Eighth Amendment? Neither party adequately explains the consequences of a denial of parole. The four Plaintiffs who were denied parole were provided an opportunity to re-appear before the parole board, anywhere from twelve months to five years after the initial parole decision. The parties do not explain how the parole board decided when to allow the individuals to re-appear, nor whether an individual denied parole is always given a chance to try again. If a sixty-year-old Plaintiff is denied parole based on a failure to complete core programs, and is instructed to reappear

before the parole board in five years, it may be that such a Plaintiff would be deprived of his or her only meaningful opportunity to obtain release. On the other hand, a Plaintiff who is forty years old and is instructed to come before the parole board again in six months may have been denied the <u>earliest</u> opportunity to obtain release, but not his or her <u>only</u> opportunity. The parties do not address this issue.

For these reasons, the Court cannot determine whether the denial of core programming to Plaintiffs deprives them of the meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation at a parole hearing. Defendants' motion for summary judgment is denied as to the issue of parole.

## IV. CONCLUSION

For the reasons provided, Defendants' motion for summary judgment (Dkt. 267) is granted in part and denied in part. The Court will conduct a telephonic status conference on July 22, 2019 at 4:00 p.m. to discuss next steps in this case.

SO ORDERED.

Dated: July 12, 2019         s/Mark A. Goldsmith
    Detroit, Michigan      MARK A. GOLDSMITH
                                   United States District Judge